THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK NASTRI, Appellant.

First Department, April 8, 1927.

**Crimes — falsely impersonating public officer in violation of Penal Law, § 931 — judgment of conviction against weight of evidence.**

The conviction of the defendant of falsely impersonating a State motor vehicle inspector, in violation of section 931 of the Penal Law, and threatening to place the driver of a motor vehicle under arrest unless he paid the defendant a small sum of money, is against the weight of the evidence, since it appears that, although the gravamen of the offense, according to the information, is impersonation of a public officer for the purpose of obtaining a paltry sum as a bribe to refrain from making an arrest, yet the defendant immediately sought to put the matter in the hands of an unknown and independent officer of the law and also evinced no interest in obtaining possession of the money. Furthermore, the complainant did not call as a witness the man who accompanied the policeman called by the defendant to arrest the complainant. The defendant, who was a duly licensed private detective, claimed that the complainant cut across in front of defendant and damaged defendant's car.

DOWLING, P. J., and MERRELL, J., dissent.

APPEAL by the defendant, Frank Nastri, from a judgment of the Court of Special Sessions of the city of New York rendered on the 2d day of September, 1926, convicting him of falsely impersonating a public officer in violation of section 931 of the Penal Law (as amd. by Laws of 1921, chap. 257).

*Anton Weidmann* [*L. Lloyd Brown* with him on the brief], for the appellant.

*Michael J. Driscoll, Deputy Assistant District Attorney,* of counsel [*Joab H. Banton, District Attorney*], for the respondent.

FINCH, J. The defendant has been convicted of falsely impersonating a State motor vehicle inspector and threatening to place under arrest one James Smith unless the latter paid him five dollars. There are certain vital facts which throw grave doubt upon the guilt of the defendant. These arise as follows:

According to the testimony of the complaining witness, while

he was driving a passenger automobile, the defendant drove alongside and directed the witness to pull into the curb, informed the witness that he was a State motor vehicle inspector and exhibited a yellow badge, identified upon the trial as the defendant's badge, reading " Detective No. 447, Licensed by State of New York." The defendant then called the attention of the complaining witness to the fact that he had commercial license plates on his passenger car and that defendant would have to arrest him, and directed the complaining witness with his car to follow the defendant; and at Fourteenth street the defendant stopped and directed the witness to remain. The defendant then went over to a traffic officer, but, according to the testimony of the defendant, the latter would not leave his post as he was very busy and told the defendant to give it to a patrolman on the beat, whereupon the defendant waited for a patrolman to come along. The complaining witness then telephoned from a drug store, ostensibly to secure a bondsman. Shortly thereafter the brother of the complaining witness, a policeman in uniform, appeared, accompanied by one Goldberg. This officer, Thomas A. Smith, testified that in response to a telephone call from his brother he went in his car to Fourteenth street and Second avenue, accompanied by one Goldberg; that the latter inquired of the defendant what the matter was and the defendant replied that he was arresting the complaining witness for having defective license plates, whereupon the officer testified: " I said to the defendant, ' Who are you? ' and he said ' I am a State officer, a State Motor Vehicle Inspector.' I said: ' Have you got your credentials? ' He said: ' Yes.' He took this gold shield from his pocket. * * * He held his hand over the back of the shield, and I looked at it, and I saw ' 447, License State of New York.' I said is that a licensed inspector. He says: ' Yes.' So I says: ' What do you want to lock him up for. It is Saturday afternoon; why don't you use a summons? ' He said: ' I am going to lock him up.' I said: ' Why don't you give him a summons; it calls for a summons. It is Saturday afternoon. He might have to go bail.' He says, ' Have you got a rope? ' I says: ' What do you want a rope for? ' He says: ' Where is his garage? ' I says ' It is on 20th Street.' He says: ' I will tow him to the garage.' I says, ' What will you tow him to the garage for? He has power, and he can go himself.' He got me one side and said: ' We will get a five dollar note and I will give you half,' and I said: 'All right, I will get you a rope,' and I then went over to the car and threw in a five dollar bill, and said get the number of that, and put your initials on it. I started across the street to get into my car and I saw the defendant get in his car and go east on 14th Street. I jumped into my car and started too and

went after him, and caught him at 13th Street and First Avenue, and said ' Give me a look at that ' and he pulled this thing out.   *   *   * I said: ' This is no good.   This is a special detective.   Why didn't you show me the word detective on that before? '   He said: ' I am a State officer,' and I said: ' Come down to the 5th Street Station then ' and I locked him up."

The defendant, who was a duly licensed private detective, testified in his behalf that at the corner of Thirteenth street and Second avenue the complaining witness cut across in front of defendant's car and scratched the car and kept on going; that the defendant followed the complaining witness and near the corner of Fourteenth street and Second avenue stopped alongside the complaining witness and asked him if he could not see where he was driving, whereupon the witness " gave me an argument." The defendant demanded his name, to which the witness replied " Smith."   The defendant then went over to the officer on post and asked the officer to assist him in taking the name of the man, but the officer stated he was too busy to leave his post and that the defendant should apply to an officer on the beat.   The defendant then returned to the complaining witness and said he would have to wait for a policeman to come along on the post.   The defendant further testified that the complaining witness asked him what he was going to do and the defendant replied that he did not know what the officer would do, but that the complaining witness had commercial plates on his car, which was illegal; that the complaining witness said that he believed he would be locked up and asked permission to call up a bondsman, went to a telephone booth and telephoned and shortly thereafter a policeman drove up, accompanied by another man, and asked what the trouble was, whereupon the defendant stated the complaining witness had scratched his car and that he wanted his name.   The defendant also called the attention of the officer to the commercial plates on the car of the complaining witness.   The officer replied that he would take care of the matter, whereupon the defendant gave the officer his card and drove off; that he was shortly after overtaken by the officer, who said: " You dirty Guinea, you are under arrest."

From the foregoing it will be seen that in order to execute successfully the crime charged, it was essential that the defendant should be free to withdraw his alleged false charge against James Smith in return for a money payment.   If a regular police officer had taken charge of the case, the defendant would not have been so free to have withdrawn the charge for a money payment as if he had retained the case in his own hands.   Yet it is admitted by the testimony of the complaining witness that immediately after the

accident the defendant sought out a traffic officer in uniform, with whom he lodged his complaint. It also appears that after the arrival of the policeman in uniform, who, unknown to the defendant, was the brother of James Smith, the defendant placed the matter in his hands and drove off without any attempt to collect the alleged bribe. In other words, although the gravamen of the offense, according to the information, is impersonation of a public officer for the purpose of obtaining a paltry sum as a bribe to refrain from arresting, yet the defendant admittedly immediately sought to put the matter in the hands of an unknown and independent officer of the law and also evinced no interest in obtaining possession of the money. Both of the aforesaid acts on the part of the defendant are thus absolutely inconsistent with the crime as charged by the complaining witness. On the other hand, they are consistent with the contention of the defendant that James Smith had driven an automobile into that of the defendant and that the latter was trying to make a complaint of the matter so that he could obtain redress for the damage. Furthermore, the complainant did not call as a witness Goldberg, who accompanied the policeman Thomas A. Smith. When the foregoing is coupled with the facts that the defendant's reputation has heretofore been good, that he has never previously been convicted of any crime, and that his livelihood has been taken away from him as a result of this conviction, in our judgment a new trial should be ordered, upon which the defendant will have the benefit of counsel.

The finding that defendant was guilty is against the weight of the evidence.

It follows that the judgment should be reversed and a new trial ordered.

MCAVOY and PROSKAUER, JJ., concur; DOWLING, P. J., and MERRELL, J., dissent.

Judgment reversed and new trial ordered. Settle order on notice.